IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHY KLEPPEL, *Plaintiff*, | § § § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-03715 |
| | § | |
| HUNTER'S MANUFACTURING COMPANY, INC. d/b/a TENPOINT CROSSBOW TECHNOLOGIES, *Defendant*. | § § § § § | |

## ORDER

Plaintiff has filed a Motion for Reconsideration (Doc. No. 58) of this Court's order granting in part and denying in part Defendant's Motion for Summary Judgment. Defendant has filed a Response thereto (Doc. No. 59), and the Court now considers both.

**I.     Kleppel's Contention Regarding Undertaking Claims**

Plaintiff Kathy Kleppel claims that this Court inappropriately granted the motion on her alleged "negligent undertaking" claim. Kleppel purports to set out her proof as to each element of her negligent undertaking claim in her motion:

> Thus, Kleppel's summary judgment evidence proves: (1) TenPoint gratuitously undertook to provide its customers with the GripGuard retrofit that it knew or should have known was necessary for their protection, in fact, it was giving the GripGuard retrofit away for free at the time Kleppel contacted TenPoint and advised it that she had a Titan TL-4 crossbow which the Defendant, as the crossbow manufacturer, knew lacked a guard, (2) TenPoint failed to exercise reasonable care in providing its customers with the GripGuard retrofit by not providing Kleppel with a GripGuard when she contacted the Defendant a few weeks before her injury, and (3) TenPoint's failure to provide Kleppel with the GripGuard retrofit increased her risk of injury, indeed, she ultimately was injured in the precise manner that the GripGuard retrofit was designed to prevent. The Court even recited these facts in its summary judgment. *See, Order*, Dkt. 56 at 25.

(Doc. No. 58, p. 10).

To support her motion, Kleppel cites as her primary authority the Supreme Court of Texas's decision in *Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000). Kleppel's analysis and her evidence, however, do not warrant a reversal of this Court's prior decision.

First of all, it is important to note that the Supreme Court in *Torrington* found the broad-form submission of negligence that was used in that case to be in error. That submission was as follows:

> The negligence question asked: "Did the negligence, if any, of the parties named below proximately cause the occurrence in question?"
>
> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.
>
> "Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

*Id.* at 837 n.6.

The Supreme Court of Texas specifically addressed the reason that submission was incorrect in terms of the duty question:

> Here, the broad-form negligence question allowed the jury to hold Torrington liable regardless of whether Torrington knew or should have known that its services were necessary to protect others. *Cf. Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). The question also allowed an affirmative answer regardless of whether anyone relied upon Torrington's undertaking, or whether Torrington's performance of its undertaking increased the plaintiffs' risk of harm. **Because the question allowed the jury to find Torrington liable even if the plaintiffs did not establish the necessary factual predicates for a negligent undertaking duty, it was erroneous.** *See id.* These essential elements of an undertaking claim should be included in the instructions accompanying a

2

> broad-form negligence question. *Cf. Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex. 1992). Thus, the jury should have been instructed that Torrington was negligent only if (1) **Torrington undertook to perform services that it knew or should have known were necessary for the plaintiffs' protection,** (2) Torrington failed to exercise reasonable care in performing those services, and either (3) the Navy relied upon Torrington's performance, or (4) Torrington's performance increased the plaintiffs' risk of harm. *See Colonial Savings [Ass'n v. Taylor]*, 544 S.W.2d [116,] 119–20 [(Tex. 1976)]; RESTATEMENT (SECOND) OF TORTS § 323 (1965).

*Id.* at 838–39 (emphasis added).

The footnotes accompanying this discussion in *Torrington* are instructive and are also quite important here:

> 7 **We have never held that a person may be liable on an undertaking theory without establishing reliance or increased risk of harm, and we decline to do so now.** To the extent *Bradshaw* recognized liability under an undertaking theory without proof of reliance or increased risk of harm, we disapprove it.
>
> 8 We note that Torrington objected to the negligence question on the basis that it owed the plaintiffs no duty. Until our opinion today, it was not clear whether or how the factual predicates for an undertaking duty should be submitted. Under these circumstances, Torrington's no-duty objection was sufficient to preserve error and to prevent deemed findings against it. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).

*Id.* at 838 n.7, 839 n.8 (emphasis added).

Kleppel has not objected to this Court's recitation of her interaction with Defendant's representative. The Court repeats those factual allegations here:

> On June 25, 2015—a couple of weeks before Kleppel's injury—Kleppel had contacted TenPoint to inquire about an accessory, an "ACUdraw," a device that assists the user in pulling the bowstring into a cocked position, and also about the difference between two crossbows that TenPoint had for sale. Kleppel testified that she believes she called TenPoint on the phone, although she is not certain. Whether or not a phone call took place, Kleppel and a TenPoint representative also corresponded by email. Kleppel's message read: "I have a Ten Point Titan TL-4, and my husband is now disabled and can't pull it back. Can we add some sort of ACU pull to this older model??? If so, what's the exact part number or

3

name I'm looking for." A TenPoint customer service representative responded the same day via email:

> Good Morning,
>
> I copied a link from our website - http://www.tenpointcrossbows.com/shop/ACUdraw-Cocking-Mechanism-P23.aspx You are looking for the acudraw- it will work on older models. If you have additional questions or concerns call or email.
>
> Thank you,
> Amber Vandegrift.

One of TenPoint's exhibits includes a second exchange, also dated June 25, in which Kleppel's message read: "One more question: Is the Lady's Shadow and the Shadow Ultra-lite identical bows except for the color of the camo???" A TenPoint representative replied via email:

> Kathy,
>
> Yes, they are the same bows just different colors.
>
> Thank you,
> Amber Vandegrift.

(Doc. No. 56, pp. 2–3).

This interchange did not, as a matter of law, establish an undertaking, and it certainly failed to raise a fact issue as to reliance by Kleppel (that was connected to the alleged product defects) or an increased risk of harm to Kleppel. Moreover, Kleppel failed to provide any summary judgment evidence in this regard. As such, this situation did not give rise to an "undertaking" duty. *See also* Restatement (Second) of Torts § 323 (Am. Law Inst. 1965).

## II. Summary Judgment Evidence

Further, for an undertaking claim to survive summary judgment, the non-movant must also establish an issue of material fact as to negligence. Kleppel failed to bring forth competent summary judgment evidence raising a fact issue as to the standard of care that a reasonable,

4

prudent person/manufacturer should follow or raising a fact issue as to whether Defendant failed to comply with that standard of care.

**III.   Negligence**

Moreover, Kleppel's allegations of negligence are as follows:

### NEGLIGENCE

39. Plaintiff adopts the facts alleged above by reference.

40. Plaintiff alleges that the Defendant committed acts of omission and commission, which collectively and severally, constituted negligence. Plaintiff alleges that the Defendant had a duty to exercise ordinary care to design, manufacture, market and sell a reasonable [sic] safe crossbow. Plaintiff alleges the Defendant breached its duty in one or more of the following ways:

    A.  Failing to design and manufacture the Tenpoint Titan TL-4 crossbow so as to be reasonably safe to users;
    B.  Failing to implement a safer design for the Tenpoint Titan TL-4 crossbow when the safer design could have been reasonably implemented and the risks to users could have been reasonably designed out of the crossbow;
    C.  Failing to adopt a safer design for the Tenpoint Titan TL-4 crossbow when any warnings left a significant residuum of risk to users;
    D.  Failing to issue a recall of the Tenpoint Titan TL-4;
    E.  Failing to provide known users of the Tenpoint Titan TL-4 crossbow with the GripGuard retrofit;
    F.  Failing to inform known users of the Tenpoint Titan TL-4 crossbow about the GripGuard retrofit;

41. Plaintiff alleges that the Defendant's negligence was a proximate cause of Plaintiff's injuries and damages.

(Doc. No. 1-3, pp. 11–12).

Kleppel does not plead an undertaking claim. Pleadings claiming the failure to recall, failure to retrofit, and failure to inform are as close as Kleppel comes to making such a claim, and these causes of action are woefully short of pleading negligent undertaking. Each of these claims speaks solely in terms of failing to do something. Nowhere is it pleaded as a cause of

action that Defendant undertook some act after the design, manufacture, and/or sale and did it negligently, that Kleppel relied on this undertaking, and that she was harmed due to that reliance or that it increased her risk of harm. One cannot claim error concerning a cause of action one has not pleaded.[1]

## IV. Conclusion

For all of the above reasons, the Motion for Reconsideration (Doc. No. 58) is denied.

Signed at Houston, Texas, this _1st_ day of April, 2019.

Andrew S. Hanen
United States District Judge

---

[1] Defendant points out that Kleppel asked for permission to amend her pleadings very late in the game to add an undertaking claim. (Doc. No. 37-1). Permission to amend was denied by the Court. (Doc. No. 43) (adopted by Doc. No. 54). A review of this proposed pleading leaves substantial questions as to whether it, had permission been granted, actually sufficiently pleaded an undertaking claim. This issue, however, is not before the Court.